UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHELSEA COMMODORE and RAKEEDHA SCARLETT, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>    - against -<br><br>H&M HENNES & MAURITZ LP,<br><br>          Defendant. | Civil Action No.: 7:22-cv-06247-CS |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS AND/OR STRIKE FIRST AMENDED COMPLAINT**

Staci Jennifer Trager (*pro hac vice*)
**NIXON PEABODY LLP**
300 S. Grand Avenue, Suite 4100
Los Angeles, CA  90071-3151
Tel.: (213) 629-6041
strager@nixonpeabody.com

Carlo F. Bustillos (*pro hac vice* pending)
**NIXON PEABODY LLP**
One Embarcadero Center, 32nd Floor
San Francisco, CA 94111
Tel.: (415) 984-8448
cbustillos@nixonpeabody.com

Erin T. Huntington
**NIXON PEABODY LLP**
677 Broadway
Albany, New York 12207
Tel.: (518) 427-2650
ehuntington@nixonpeabody.com

*Attorneys for Defendant H&M Hennes & Mauritz LP*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... ii

STATEMENT OF FACTS ........................................................................................... 2

ARGUMENT ................................................................................................................ 4

A.   Standard of Review ......................................................................................... 4

B.   Counts I and II for Violations of the GBL Fail to State a Claim .................... 5

   1.   H&M's Conscious Choice Representations Do Not Mislead Consumers ........................ 6

     a.   Plaintiffs Mischaracterize H&M's Representations Regarding the Composition of Conscious Choice Products .................... 6

     b.   The Environmental Impact of the Fashion Industry ..................... 8

   2.   Plaintiffs Do Not Allege that H&M's Recycling Program is Deceiving ..................... 11

     a.   H&M's Statements Regarding its Recycling Program are Truthful and Accurate ....... 11

     b.   H&M's Statements Regarding its Recycling Program Comply with the Green Guides ................ 12

   3.   H&M's Sustainability Profiles are not Misleading to a Reasonable Consumer ............. 13

     a.   Plaintiffs' Alleged Deception is Implausible ................ 14

     b.   The Sustainability Profiles Were Ambiguous As They Included Both Correct and Incorrect Information ................ 16

C.   Plaintiffs Fail to State a Claim for Unjust Enrichment ................................... 18

D.   Plaintiffs Fail to State a Claim for Breach of Express Warranty .................... 20

E.   Plaintiffs Lack Standing for Injunctive Relief ............................................... 21

F.   Plaintiffs Nationwide Class Claims Must be Dismissed or Stricken .............. 23

CONCLUSION ........................................................................................................... 25

4887-2773-3585.3

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Anderson v. Bungee Int'l Mfg. Corp.*,
  44 F. Supp. 2d 534 (S.D.N.Y. 1999)........................................................................21

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
  28 F.4th 343 (2d Cir. 2022) ...................................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................4, 5

*Barreto v. Westbrae Nat., Inc.*,
  518 F. Supp. 3d 795 809 (S.D.N.Y. 2021)........................................................20, 23

*Barton v. Pret A Manger (USA) Ltd.*,
  535 F. Supp. 3d 225 (S.D.N.Y. 2021)......................................................................6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................4

*Berni v. Barilla S.P.A.*,
  964 F.3d 141 (2d Cir. 2020)...................................................................................22

*Braynina v. TJX Cos.*,
  2016 WL 5374134 (S.D.N.Y. Sept. 26, 2016)..........................................................5

*Campbell v. Whole Foods Mkt. Grp., Inc.*,
  516 F. Supp. 3d 370 (S.D.N.Y. 2021)....................................................................20

*Carver v. City of New York*,
  621 F.3d 221 (2d Cir. 2010).................................................................................22

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  433 F.3d 181 (2d Cir. 2005)..................................................................................23

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)...............................................................................3, 5

*Chin v. General Mills, Inc.*,
  12–CV–2150, 2013 WL 2420455 (D. Minn. June 3, 2013) .................................20

*Chufen Chen, v. Dunkin' Brands, Inc.*,
  954 F.3d 492 (2d Cir. 2020)......................................................................14

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)...................................................................................22

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013).................................................................................22

*Cooper v. Anheuser-Busch, LLC*,
  553 F. Supp. 3d 83 (S.D.N.Y. 2021).........................................................8

*In re Digital Music Antitrust Litig.*,
  812 F. Supp. 2d 390 (S.D.N.Y. 2011)......................................................18

*Duchimaza v. Niagara Bottling, LLC*,
  2022 WL 3139898 (S.D.N.Y. Aug. 5, 2022).............................5, 12, 13, 22

*Duran v. Henkel of Am., Inc.*,
  450 F. Supp. 3d 337 (S.D.N.Y. 2020)......................................................23

*Dwyer v. Allbirds, Inc.*,
  598 F. Supp. 3d 137 (S.D.N.Y. 2022).........................................................9

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ...............................................................6, 15

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013).......................................................................6

*Foster v. Whole Foods Mkt. Grp., Inc.*,
  2023 WL 1766167 (E.D.N.Y. Feb. 3, 2023)...............................17, 18, 20

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
  2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)...........................................24

*Goldstein v. Walmart, Inc.*,
  2022 WL 16540837 (S.D.N.Y. Oct. 28, 2022) .........................................22

*Gordon v. Target Corp.*,
  2022 WL 836773 (S.D.N.Y. Mar. 18, 2022) ...............................................9

*In re Grand Theft Auto Video Game Consumer Litig.*,
  251 F.R.D. 139 (S.D.N.Y. 2008) .............................................................24

*Harris v. Mondelēz Global LLC*,
  2020 WL 4336390 (E.D.N.Y. July 28, 2020) ...........................................20

4887-2773-3585.3

*Holve v. McCormick & Co., Inc.*,
    334 F. Supp. 3d 535 (W.D.N.Y. 2018)................................................................23

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
    936 F.2d 759 (2d Cir. 1991).............................................................................3

*In re IPO Sec. Litig.*,
    544 F. Supp. 2d 277 (S.D.N.Y. 2008)..............................................................25

*Izquierdo v. Panera Bread Co.*,
    450 F. Supp. 3d 453 (S.D.N.Y. 2020)..............................................................14

*Jessani v. Monini N. Am., Inc.*,
    744 F. App'x 18 (2d Cir. 2018) .........................................................................6

*Kennedy v. Mondelēz Global LLC*,
    2020 WL 4006197 (E.D.N.Y. July 10, 2020)..............................................13, 19

*Kommer v. Bayer Consumer Health*,
    252 F. Supp. 3d 304 (S.D.N.Y. 2017)..............................................................16

*Kommer v. Ford Motor Co.*,
    2017 WL 3251598 (N.D.N.Y. July 28, 2017) ....................................................8

*Lewis v. Casey*,
    518 U.S. 343 (1996)........................................................................................23

*Lugones v. Pete & Gerry's Organic, LLC*,
    440 F. Supp. 3d 226 (S.D.N.Y. 2020)..............................................................23

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)........................................................................................21

*Mantikas v. Kellogg Co.*,
    910, F.3d 633, 637 (2d Cir. 2018)...............................................................17, 18

*Maurizio v. Goldsmith*,
    230 F.3d 518 (2d Cir. 2000)..............................................................................6

*Nelson v. MillerCoors, LLC*,
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) ...............................................11, 16, 19, 21

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)........................................................................................22

*Parks v. Ainsworth Pet Nutrition, LLC*,
    377 F. Supp. 3d 241 (S.D.N.Y. 2019)..............................................................19

*Patellos v. Hello Prods., LLC*,
    523 F. Supp. 3d 523 (S.D.N.Y. 2021)..................................................................23

*Pichardo v. Only What You Need, Inc.*,
    2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020) ......................................................14

*Pilgrim v. Universal Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011) ..............................................................................25

*Reyes v. Crystal Farms Refrigerated Distrib. Co.*,
    2019 WL 3409883 (E.D.N.Y. July 26, 2019) ......................................................17

*Route v. Mead Johnson Nutrition Co.*,
    2013 WL 658251 (C.D. Cal. Feb. 21, 2013) .......................................................25

*Shain v. Ellison*,
    356 F.3d 211 (2d Cir. 2004) ................................................................................22

*Simon v. Eastern Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ..............................................................................................24

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ............................................................................................22

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
    497 F.3d 144 (2d Cir. 2007) ..................................................................................8

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016) ..................................................................................5

*Yastrab v. Apple Inc.*,
    2015 WL 1307163 (N.D. Cal. Mar. 23, 2015) ....................................................21

*Yodice v. Touro Coll. & Univ. Sys.*,
    2021 WL 5140058 (S.D.N.Y. Nov. 4, 2021) .........................................................9

**State Cases**

*Corsello v. Verizon N.Y., Inc.*,
    944 N.Y.S.2d 732 (2012) ....................................................................................19

*Gomez-Jimenez v. N.Y. L. Sch.*,
    103 A.D.3d 13 (1st Dep't 2012) ...........................................................................8

*Nigro v. Lee*,
    63 A.D. 3d 1490 (3d Dep't 2009) ......................................................................21

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995) .......................................................................................9, 16

**State Statutes**

N.Y. General Business Law § 349 .................................................................................5, 8, 9, 12, 19

N.Y. General Business Law § 350 .................................................................................5, 12

N.Y. U.C.C. § 2–313 .................................................................................20, 21

N.Y. U.C.C. § 2–317 .................................................................................20, 21

**Regulations**

16 C.F.R. § 260.12( .................................................................................13

4887-2773-3585.3

## PRELIMINARY STATEMENT

Defendant H&M Hennes & Mauritz LP ("H&M" or "Defendant") is a pioneer of sustainability efforts in the fashion industry and has been for over a decade. In 2013, it was the first global fashion retailer of its size to disclose its supplier list and has continuously expanded its transparency towards customers since.[1] For years, H&M has consistently been named as a leader in corporate sustainability efforts by a number of independent organizations examining a variety of metrics.[2] H&M's longstanding policies of openness and transparency mean that its successes and continued challenges in making its practices more sustainable are prominently featured in its statements to customers.[3] H&M's Conscious Choice collection is built upon clear and trustworthy statements in keeping with these tenets. Rather than attempt to disguise environmental impacts, H&M provides consumers the information they need to make educated decisions.

The foundation of this entire case rests on Plaintiffs Chelsea Commodore's ("Commodore") and Rakeedha Scarlett's ("Scarlett") (collectively, "Plaintiffs") strategic omission of key wording in H&M's advertising. By removing the word "more" from H&M's statement "at least 50% more sustainable materials," Plaintiffs alter H&M's comparative statements and leverage a repackaged version as a basis to claim widespread deception. In so doing, Plaintiffs defy the ordinary meaning of the words and completely ignore the plain text of the subject disclosures, manufacturing an illusory claim of 'greenwashing'. This second attempt at pleading does not salvage Plaintiffs claims, and the First Amended Complaint ("FAC") must be dismissed.

---

[1] *See* H&M Group, *Supply Chain,* https://hmgroup.com/sustainability/leading-the-change/transparency/supply-chain/ (last visited February 21, 2023).

[2] *See, e.g.,* H&M Group, *Awards and Recognitions,* https://hmgroup.com/sustainability/leading-the-change/awards-and-recognitions/ (last visited February 21, 2023) (noting recognition from the, Fashion Transparency Index, Textile Exchange Corporate Fiber & Materials Benchmark, and Ecogain Biodiversity Index).

[3] *See, e.g.,* H&M, *Let's Change,* https://www2.hm.com/en_us/sustainability-at-hm/our-work/lets-change.html (last visited February 21, 2023) ("H&M's Sustainability Page - Let's Change") ("The industry has to change and someone has to take the lead. So, let's make that us.")); Declaration of Erin Huntington ("Huntington Decl."), Ex. 1.

## STATEMENT OF FACTS

H&M is a multinational retailer of fashion-forward clothing for men, women, and children offering direct-to-consumer sales through its website and numerous brick-and-mortar stores.  FAC, ℙ 67. Plaintiffs claim to have "reviewed and considered H&M's Sustainability Profiles…the labeling, packaging, and marketing materials" prior to purchasing Conscious Collection garments from brick-and-mortar stores in New York State and through H&M's website.  FAC, ℙℙ 69, 70. Plaintiffs seek to represent a nationwide class of consumers who purchased products in H&M's Conscious Choice collection, and a subclass comprised of New York consumers.  FAC, ℙ 77.

Plaintiffs allege that H&M 'greenwashes' its products in three ways: (1) that "certain of its Products[4], called the Conscious [Choice] Collection, contain[] [sic] 'at least 50% sustainable materials, such as organic cotton and recycled polyester.'" (FAC, ℙ 18); that (2) H&M's "Garment Collecting programme…works to prevent customers unwanted clothes and textiles from going to landfill" (FAC, ℙ 20); and that (3) its marketing of clothing with "Sustainability Profiles" containing falsified information that do not comport with the underlying data (FAC, ℙℙ 6–14) (collectively, the "Sustainability Misrepresentations").

First, Plaintiffs misquote and mischaracterize H&M's use of phrases "such as 'recycling,' 'circular,' and 'closing the loop'" (FAC, ℙ 31), and the representation that H&M's Conscious Choice collection contains "at least 50% sustainable materials, such as organic cotton and recycled polyester." FAC, ℙ 18.  Plaintiffs claim this gives the mistaken impression that the materials in the Conscious Choice collection "are nonetheless environmentally sustainable" when in reality they use "synthetic materials such as polyester[.]" FAC, ℙ 19.  But, as discussed further below, Plaintiffs' allegations are carefully crafted to omit the full text and context of H&M's

---

[4]The FAC defines "Products" as H&M's products which contained a "Sustainability Profile" or a "Sustainability Misrepresentation." FAC, ℙ 3.

representations.  For example, the actual representation by H&M is that "Each Conscious choice product contains at least 50% of **more** sustainable materials – like organic cotton or recycled polyester – but many contain a lot more than that.  The only exception is recycled cotton, where we accept a level of at least 20%."  *See* H&M, *Conscious Choice Explained*, https://www2.hm.com/en_us/sustainability-at-hm/our-products/explained.html    (last    visited February 21, 2023) ("Conscious Choice Explained"); Huntington Decl., Ex. 2.[5]    H&M discontinued the Conscious Choice collection on October 27, 2022.

Second, Plaintiffs allege that H&M's statements concerning its recycling program are misleading.[6]  *See, e.g.,* FAC ¶ 20 (H&M "touts a recyclability program with bins in stores to convince consumers that they can purchase products without adding to the significant waste of the fast-fashion industry.")  Plaintiffs assert that this is misleading because "[r]ecycling solutions either do not exist or are not commercially available for the vast majority of Products" (FAC, ¶ 20) such that "only 35% of what [H&M] collects is recycled" (FAC, ¶ 25).

---

[5]Although explicitly referenced and relied upon as a basis for Plaintiffs' allegations throughout the FAC, the "Sustainability" section of H&M's website was not attached thereto and is being submitted contemporaneously with this Brief for the court's review.  *See* FAC, ¶¶ 1, 2, 6, 8-13, 54, 67, 69, 70, 87; *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-23 (2d Cir. 2002) (noting that at the motion to dismiss stage, a court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" as well as any documents "integral" to the complaint, i.e., "where the complaint 'relies heavily upon [the document's] terms and effect'"); *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.,* 936 F.2d 759, 762 (2d Cir. 1991) (holding that a plaintiff cannot "evade a properly argued motion to dismiss simply because [P]laintiff has chosen not to attach[] the [document referenced in the complaint] to the complaint or to incorporate it by reference.").  Notwithstanding, H&M also submits complete copies of webpages referenced by the FAC as part of its Request for Judicial Notice under Federal Rule of Evidence 201.
[6]The FAC includes a graphic from H&M's website which states: "The H&M Garment Collecting programme is a global initiative that works to prevent customers unwanted clothes and textiles from going to landfill." FAC, ¶ 20.

Third, Plaintiffs seize upon a coding error[7] on H&M's website.  Beginning in May 2021, H&M's website included "Higg Sustainability Profiles" for certain[8] garments, allowing customers to compare the environmental impact of those products "like how much water and fossil fuels were used to create the materials in a piece of clothing, compared to conventional fabrics" ("Higg Index Scores").  *See* Quartz Investigation, available at https://qz.com/2180075/hm-showed-bogus-environmental-higg-index-scores-for-its-clothing/ ("Quartz Investigation"); Huntington Decl., Ex. 7.  H&M mistakenly "miscoded" Higg Index Scores as uniformly "positive" such that "more" was transcribed as "less."  *See id.*; *see also* FAC, ¶¶ 8, 10, 13.  But only 136 out of the "630 women's clothing scorecards" included errors, while 168 accurately showed a positive environmental impact.  *See* Quartz Investigation. Quartz attributed the error to H&M's code that "assumed only the best."  *Id.*  "Following the results of the Quartz investigation [on June 28, 2022], H&M removed all of the Sustainability Scorecards presented for the Products." FAC, ¶ 12.

## ARGUMENT

### A.   Standard of Review

It is well-established that in order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), *remanded*, 574 F.3d 820 (2d Cir. 2009).  A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the

---

[7]As detailed in the Quartz Investigation cited by the FAC, H&M's website code included variable entries for the amount of water used by each product, but assumed that those products only used less water.  *See* Quartz Investigation. As a result, the website did not display Higg Index data indicating that certain products used more water.  H&M removed all of the Sustainability Scorecards once it was alerted of this error. *See* FAC, ¶ 12.

[8]As noted in the Quartz Investigation, "[t]he vast majority of items on H&M's website have never included a scorecard."  *See* Quartz Investigation.

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Court may consider "statements or documents incorporated into the complaint by reference." *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016) (citation omitted); *see also Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 n.3 (2d Cir. 2022) ("A document that is integral to the complaint and partially quoted therein may be incorporated by reference in full."). Further, "[w]here a document is referenced in a complaint, the documents control" and the Court "need not accept as true the allegations" in the complaint that are inconsistent with these documents. *Tongue*, 816 F.3d at 206 n.6 (citation and internal quotation marks omitted). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

B.   **Counts I and II for Violations of the GBL Fail to State a Claim**

Counts I and II allege violations of New York's General Business Law ("GBL") for deceptive trade practices and false advertising. GBL §§ 349, 350. "Courts have found that the scope of § 350 is as broad as that of § 349 . . . and that its essential elements are the same." *Duchimaza v. Niagara Bottling, LLC*, 2022 WL 3139898, at *7 (S.D.N.Y. Aug. 5, 2022) (citing *Braynina v. TJX Cos.*, 2016 WL 5374134, at *4 (S.D.N.Y. Sept. 26, 2016)) (internal citation omitted). To establish a prima facie case under GBL §§ 349 or 350, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521–22 (2d Cir. 2000).

1.      **H&M's Conscious Choice Representations Do Not Mislead Consumers**

The reasonable consumer standard is an "objective standard." *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 236 (S.D.N.Y. 2021).  The reasonable consumer standard requires more than a mere possibility that the defendant's label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.,* 838 F.3d 958, 965 (9th Cir. 2016) (internal quotation marks and citation omitted); *see also Fink v. Time Warner Cable,* 714 F.3d 739, 741 (2d Cir. 2013) (whether allegedly deceptive advertising would mislead a reasonable customer is a matter of law suitable for determination at the motion to dismiss stage). With respect to product marketing, the Second Circuit consistently demands that plaintiffs "do more than plausibly allege that a label might conceivably be misunderstood by some few consumers.  Instead, Plaintiffs must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (*quoting Ebner*, 838 F.3d at 965).

Plaintiffs allege that H&M's Conscious Collection deceives consumers into thinking that its Products are sustainable.  Specifically, the FAC takes issue with two categories of representations: those regarding the composition of the Products (using allegedly "unsustainable materials") and those regarding H&M's overall environmental impact.

a.      ***Plaintiffs Mischaracterize H&M's Representations Regarding the Composition of Conscious Choice Products***

H&M's description of its Conscious Collection states that: "Each Conscious choice product contains at least 50% of more sustainable materials — like organic cotton or recycled polyester — but many contain a lot more than that."  *See* H&M Conscious Choice Explained. Plaintiffs distort this statement in the FAC, omitting the word "more" in order to impute wide

ranging environmental benefits that H&M has never made.  *See* FAC, ⁋ 18.  By ignoring the actual text of H&M's statement, Plaintiffs argue that H&M "gives consumers the impression that the materials used in its Products are nonetheless environmentally sustainable."  FAC, ⁋ 19.

Yet, H&M does not represent that its products are sustainable – full stop.  It does not even state that its clothes are "more sustainable" than competitors' clothing.  Rather, it clearly tells consumers that Conscious Choice garments contain "more sustainable materials" than regular materials.  *See* H&M Conscious Choice Explained.

Plaintiffs' foundational premise is therefore inaccurate.  The FAC leaps to discussing whether polyester is a sustainable material (FAC, ⁋ 18) and whether recycled polyester "hasten[s] the path to landfills" (FAC, ⁋ 30) without ever considering the plain meaning of H&M's statements.  No reasonable consumer would understand H&M's representations to convey that the Conscious Choice clothing line is inherently sustainable; or that its clothing is environmentally friendly by any metric they choose to apply.   Rather, a reasonable reading of H&M's advertisements is that the Conscious Choice collection uses materials that are *more* sustainable than those in comparable garments.[9]

Nowhere in the FAC do Plaintiffs dispute that materials like "organic cotton or recycled polyester" are "more sustainable" than conventional fabrics like non-recycled polyester (also known as "virgin polyester").  Despite Plaintiffs' artful pleading, H&M's Conscious Choice line merely identifies for consumers those products that are composed of recycled polyester rather than virgin polyester, or organic cotton rather than regular cotton.  *See Gomez-Jimenez v. N.Y. L. Sch.*, 103 A.D.3d 13 (1st Dep't 2012) ("a party does not violate GBL 349 by simply publishing truthful

---

[9]The Higg index makes the same comparison in evaluating the sustainability of materials.  *See* Quartz Investigation ("The [Sustainability P]rofiles incorporate factors like how much water and fossil fuels were used to create the materials in a piece of clothing, **compared to conventional fabrics**.") (Emphasis added.)

information and allowing consumers to make their own assumptions about the nature of the information."). Because it refuses to acknowledge the actual comparison offered by H&M, Plaintiffs have not pleaded, and cannot plausibly plead, that a reasonable consumer would interpret H&M's statements, in context, to mean that the materials used in its Products are plainly environmentally sustainable without reference to H&M's other clothing lines or similar products from competing fast-fashion retailers. Therefore, Plaintiffs set forth an implausible basis for their claims of deception. *See Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 95 (S.D.N.Y. 2021) (dismissing GBL claim at the motion-to-dismiss stage where plaintiff's "claims are patently implausible or unrealistic").

Nor can vague statements like "conscious," "conscious choice" or "a shortcut to sustainable choices" (FAC, ¶ 2) form the basis for a GBL claim as they amount to nonactionable puffery. *See Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 160 (2d Cir. 2007) (characterizing puffery as "[s]ubjective claims about products, which cannot be proven either true or false."). There are no measurable data points in these statements that render them capable of being true or false. Instead, they point to a general theme of sustainability and corporate improvement. Plaintiffs' interpretation of "conscious choice" to mean that the Products "biodegrade, [and do not] shed[] toxic microfibers," is likewise implausible. *Kommer v. Ford Motor Co.*, 2017 WL 3251598, at *3 (N.D.N.Y. July 28, 2017) (finding statement that car was "Built Ford-Tough" was puffery where plaintiff interpreted statement to mean that the car's door handles would work in below-freezing temperatures).

### b.   *The Environmental Impact of the Fashion Industry*

"[A] plaintiff can only state a claim for omission under the GBL where the business alone possesses material information that is relevant to the consumer and fails to provide this

information." *Gordon v. Target Corp.*, 2022 WL 836773, at \*10 (S.D.N.Y. Mar. 18, 2022); *see Yodice v. Touro Coll. & Univ. Sys.*, 2021 WL 5140058, at \*5 (S.D.N.Y. Nov. 4, 2021).

Plaintiffs devote much of the FAC to detailing the various harmful effects of H&M's products and the fast-fashion industry at large.  As is plainly evident from the FAC, H&M does not solely possess the allegedly omitted information, given that Plaintiffs cite to the Environmental Protection Agency, the United Nations Environment Program, the World Bank, the United States Geological Survey, and numerous publicly available studies and reports educating consumers on the impact of fast fashion – and H&M specifically – on the environment.  *See* FAC, ¶¶ 27, 36-38, 40, 41, 45, 47; *see Gordon*, 2022 WL 836773, at \*11 (plaintiff failed to plausibly allege that defendant improperly omitted information because, according to plaintiff, health experts had been publishing it for years).  Plaintiffs' claims are undermined by their own allegations recounting the extent to which consumers are inundated with information detailing the harmful environmental impacts of the fast fashion industry.  Accordingly, their contention that reasonable consumers would not "know the true nature of the Products" (FAC, ¶ 73) is insufficient to show H&M materially misled reasonable consumers.  *See Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 151 (S.D.N.Y. 2022) ("[t]here is no obligation under GBL § 349 or § 350 to provide whatever information a consumer might like to know"); *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) (GBL § 349 "surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation[]"); *see also Gordon*, 2022 WL 836773, at \*11.

Plaintiffs' claims are further undermined by the fact that H&M actually does educate consumers on the environmental benefits and impacts of its products and the fast fashion industry. Every single one of H&M's statements regarding its efforts to become more sustainable is

grounded in the acknowledgement of its environmental impact.  While other companies like Patagonia may shy away from using terms like "sustainable," given the overall impact of the fashion industry, H&M has consistently used that term to describe its efforts – not in an attempt to distract from its environmental impact but to highlight them.[10]

H&M first launched its Conscious Collection in 2010 and has made transparency a key focus of its sustainability efforts:

> We believe that being transparent is an important part of becoming more sustainable. Sharing knowledge about our business and how we make our clothes gives you more power as a customer.  The more you know, the more informed decisions you can make.  We want you to feel confident that the products you buy from us are made both responsibly and sustainably.
>
> When you click on an H&M product, you can find out which materials the product is made from, which countries it was produced in, and which suppliers and factories we partnered with to make it.  You can find all this, as well as information on how to recycle your clothes, in our Product Background section on the product's page. The only exception is products made before our tracking system was developed.

H&M, *Let's be transparent*, https://www2.hm.com/en_us/sustainability-at-hm/our-work/transparent.html (last visited February 21, 2023); Huntington Decl., Ex. 4.  H&M also makes its consumers aware of the environmental impacts of its business.  *See* H&M, *Let's close the Loop*, https://www2.hm.com/en_us/sustainability-at-hm/our-work/close-the-loop.html (last visited

---

[10] Plaintiffs' idolization of Patagonia is bizarre given that the differences between the two companies highlighted in the FAC are largely a matter of semantics.  The FAC lauds Patagonia for "prioritiz[ing] long-lasting durable clothing" made with "recycled materials and certified materials such as certified organic cotton" (FAC ¶ 43) yet ironically claims that H&M's efforts to use the exact same materials is deceptive (FAC, ¶ 18 [noting that the Products contain "organic cotton"]) and overlooks H&M's guide on "how to repair, remake and refresh [its] clothes to make them last longer."  The FAC expresses "concern" over H&M's use of "synthetics" but fails to mention that Patagonia uses a large percentage of synthetic fibers in its products as well, including, for example, it's bestselling Nano Puff jacket – made from postconsumer recycled polyester, the same materials H&M uses.  The FAC applauds Patagonia's acknowledgment "that it is part of the problem" (FAC, ¶ 43) but overlooks similar statements by H&M.  Indeed, *any* time a fashion retailer makes a claim about the environmental benefits of *any* of their products, it is received by consumers in a context containing an overwhelming amount of information concerning the fashion industry's environmental effects.  No retailer can claim to have reversed or cancelled their brand's environmental effects.  The best and only claim that any retailer can make is to minimize their environmental impact - which is precisely what H&M has consistently done for years.

February 21, 2023) ("less than 1% of the materials used to make clothes get recycled each year. This means that thousands of tons of textiles end up in landfills.  By reusing or recycling fashion, we can turn that around."); Huntington Decl., Ex. 3.  The fact that the FAC omits this context does not save it from dismissal.  *See, e.g., Nelson v. MillerCoors, LLC,* 246 F. Supp. 3d 666, 676 (E.D.N.Y. 2017) (dismissing claims where "every single representation Plaintiff pleaded reliance on . . . is accompanied by language" clarifying the alleged misrepresentation).

Given both the common knowledge of the environmental impact of fast-fashion, and H&M's pervasive contextualizing statements, Plaintiffs have failed to sufficiently allege an actionable omission, or that a reasonable consumer would be misled by H&M's representations.

## 2.    Plaintiffs Do Not Allege that H&M's Recycling Program is Deceiving

### a.    *H&M's Statements Regarding its Recycling Program are Truthful and Accurate*

Once again, Plaintiffs misquote H&M's representations in order to impute far-reaching environmental claims.  H&M's statement reads: "The H&M Garment Collecting programme is a global initiative that works to prevent customers unwanted clothes and textiles from going to landfill."  FAC, ⁋ 20.  It does not state that "clothes will not end up in a landfill" (FAC, ⁋ 21), or that products will not add to the "waste of the fast-fashion industry" (FAC, ⁋ 20).  It is absurd to think that H&M's placement of recycling bins in its stores implies that it has single-handedly negated the environmental impact of the fast-fashion industry, and H&M never tells consumers that it prevents <u>all</u> clothes from going to landfills.

In fact, H&M tells consumers <u>exactly</u> what happens to clothing placed in the in-store recycling bins.  H&M's 2021 Sustainability Disclosure, available on its website along with the Products, states that despite COVID-19 disruptions, H&M:

> Gathered 15,944 tonnes of…post-consumer garments and home textiles for reuse
> and recycling, making it easier for consumers to recycle and demonstrating that

-11-

these resources have value…50-60% [of garments were] sorted for re-wear and reuse and 35-45% recycled to become products for other industries or made into new fibres. We continued collaborating with partners to make use of the remaining 3-7% that, as a last resort, had to be disposed of another way, prioritizing incineration for energy recovery and never sending textiles to landfill.

H&M 2021 Sustainability Disclosure, 43, https://hmgroup.com/wp-content/uploads/2022/03/HM-Group-Sustainability-Disclosure-2021.pdf (last visited February 21, 2023); Huntington Decl., Ex. 5.

> **b.     *H&M's Statements Regarding its Recycling Program Comply with the Green Guides***

It is a "complete defense" to liability under GBL §§ 349 and 350 that an "act or practice is . . . subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States." GBL § 349(d); *see also id.* § 350(d) (similar language).  The term "recyclable" is a term of art informed by the Federal Trade Commission's ("FTC") Guides for the Use of Environmental Marketing Claims ("Green Guides").  *See Duchimaza*, 2022 WL 3139898, at *8.  The Green Guides state:

> [m]arketers should clearly and prominently qualify recyclable claims to the extent necessary to avoid deception about the availability of recycling programs and collection sites to consumers ... *[w]hen recycling facilities are available to less than a substantial majority of consumers or communities where the item is sold*, marketers should qualify all recyclable claims.

16 C.F.R. § 260.12(b)(2) (emphasis added).  As it happens, the FAC admits that H&M's recycling bins are available in its stores and thus available for consumers to place their products in the recycling stream.  FAC, ¶ 20.  Instead, Plaintiffs' "focus is explicitly on the availability and existence of recycling programs and collection sites," which is insufficient to state a claim since "whether a recyclability claim is misleading turns not on the incidence of recycling, but whether a

-12-

substantial majority of consumers can place such products into the recycling stream." *Duchimaza,*

2022 WL 3139898, at \*9; *see* FAC, ⁋⁋ 22, 25 ("only 35% of what [H&M] collects is recycled").

The FAC conflates recycling options "for the vast majority of Products" (FAC, ⁋ 22) with

those available to "a substantial majority of consumers or communities where the item is sold."

*See* 16 C.F.R. § 260.12(b)(1) (defining substantial majority as "at least 60 percent"). The FAC

makes no allegation regarding the proportion of consumers or communities for whom recycling

facilities are available. Plaintiffs' citation to recycling statistics by "I:Collect, the company that

handles the donations for H&M" (FAC, ⁋ 25) is inapposite, since I:Collect is a Swiss company

that handled *global* recycling for H&M for all its stores. *See* H&M Group, *Garment collecting:*

*from throwaway to here to stay*, available at https://hmgroup.com/our-stories/garment-collecting-

from-throwaway-to-here-to-stay/ (last visited February 21, 2023) ("[I:Collect] started collecting

unwanted textiles in H&M stores in 2012 in Switzerland, rolling out the initiative globally in

2013"); Huntington Decl., Ex. 6. Nothing in the FAC disputes that recycling facilities are available

to at least 60% of New York, or American consumers. This lack of specificity is fatal to

[Plaintiffs'] claim." *Duchimaza,* 2022 WL 3139898, at \*9.

Both as a matter of law and fact, the FAC fails to adequately allege that H&M's

representations regarding its recycling program are misleading or even factually inaccurate. As

such, to the extent Counts I and II rely upon these representations, they must be dismissed.

### 3.     H&M's Sustainability Profiles are not Misleading to a Reasonable Consumer

"[I]n determining whether a reasonable consumer would have been misled by a particular

advertisement, context is crucial." *Chufen Chen, v. Dunkin' Brands, Inc.,* 954 F.3d 492, 501 (2d

Cir. 2020); *see also, Izquierdo v. Panera Bread Co.,* 450 F. Supp. 3d 453, 461 (S.D.N.Y. 2020).

In determining whether a reasonable consumer would be misled, "[c]ourts view each allegedly

misleading statement in light of its context on the product label or advertisement as a

-13-

whole." *Pichardo v. Only What You Need, Inc.*, 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020).

### a.      Plaintiffs' Alleged Deception is Implausible

As detailed by the FAC, consumers are confronted with a variety of information – both from H&M and from third-parties – regarding the environmental impact of their contemplated purchases.  *See, e.g.,* FAC, ¶ 30 (fast fashion is "one of the top polluting industries worldwide" and H&M specifically is "one of fashion's largest polluters").  The Sustainability Profiles appeared alongside numerous truthful and accurate statements regarding the composition of each garment, and links to H&M's efforts to lessen its environmental impact.  *See* Quartz Investigation.  There is no indication that the Sustainability Profiles themselves deceived any consumers regarding the environmental attributes of the Conscious Choice products.  For their own part, Plaintiffs stop well short of alleging that they made their purchases because of the Sustainability Profiles alone.  *See* FAC ¶¶ 69, 70 (Plaintiffs "reviewed and considered H&M's Sustainability Profiles" among other information, including "the labeling, packaging, and marketing materials").  Indeed, Plaintiffs do not even contend that they made their purchases before the Quartz Investigation revealed H&M's coding error.  *See* FAC, ¶¶69, 70 (alleging only that Plaintiffs' purchases were "[w]ithin the applicable limitations period").

The Sustainability Profiles were only available for a fraction of H&M's products.  *See* Quartz Investigation ("[t]he vast majority of items on H&M's website have never included a scorecard").  For those products that did include a Sustainability Profile, the vast majority were accurate and only a fraction thereof contained the errors upon which Plaintiffs base their claims.  *See id.* (concluding that only 136 out of the "630 women's clothing scorecards" included errors, while 168 accurately showed a positive environmental impact and 326 indicated "no improved impact on the environment").  Of the narrow subset of products which contained inaccurate

-14-

representations of the Higg data, the Sustainability Profiles were just one of several reference points for consumers to evaluate the environmental impact of their purchases. *See* FAC, ⁋ 16 ("the Sustainability Profiles became part and parcel of [H&M's] labeling, packaging, and marketing"). Plaintiffs' attempt to transform a coding error affecting a fraction of its products into an "extensive marketing scheme" (FAC, ⁋ 5) is facially implausible.[11]

Moreover, "the reasonable consumer standard requires a probability that a significant portion of the general consuming public *or of targeted consumers*, acting reasonably in the circumstances, could be misled." *Ebner,* 838 F.3d at 965 (emphasis added). Plaintiffs specifically allege that H&M targeted "the growing segment of consumers who care about the environment" with these representations. FAC, ⁋ 2. It is precisely this segment of consumers that would be most interested, or perhaps downright skeptical, of the basis for H&M's allegedly misleading claims.

H&M's Sustainability Profiles explicitly told consumers that they were based upon an outside study. *See* FAC, ⁋ 6 (noting that "[i]n marketing its clothing, H&M . . . called [them] 'Higg Sustainability Profiles'[.]") H&M never represented that it calculated the environmental impact of its products itself, and specifically referred customers to the Higg Index Scores. Indeed, each Sustainability Profile contained a link directly underneath the results where consumers could "Click here for full data and methodology information." *See* FAC, ⁋ 9; *see also* Quartz

---

[11]The Higg Index's water usage data was premised upon a comparison of using regular polyester and recycled polyester. Declaration of Abigail Kammerzell ("Kammerzell Decl."), ⁋ 3. As such, the coding error that ostensibly deceived Plaintiffs applied only to Products containing recycled polyester. Out of the 1,205 H&M products that included Sustainability Profiles, only 176 (14.6%) contained recycled polyester. *Id.* at ⁋ 4. In other words, less than 15% of the Products could have conveyed the coding error at the crux of Plaintiffs' claims. Moreover, the Sustainability Profiles were accessible through an accordion, where the level rating for each product was available by default, but consumers had to click on an arrow to expand the accordion in order to view the "environmental impact factors" like water usage, water pollution, fossil fuel usage, and global warming potential. *Id.* at ⁋ 6. Based upon data compiled by H&M, comparing click data with the percentage of Products with the water usage reporting error, only 0.2% of consumers located within the US who interacted with the Products clicked to expand the accordion making the coding error visible. *Id.* at ⁋ 8. In other words, 99.8% of all consumers who accessed H&M's products with a Sustainability Profile never saw this error. *Id.* at ⁋ 9. Thus, of the 26,147 Products sold to New York consumers, only 52 were sold to customers who could have conceivably seen the coding error. *Id.* at ⁋ 10.

Investigation.  Clicking this link would take consumers directly to the Higg Sustainability Profile on the Higg website which correctly displayed the underlying data.[12]  *See id.*; *Kommer v. Bayer Consumer Health,* 252 F. Supp. 3d 304, 312 (S.D.N.Y. 2017) (dismissing claims where clarifying language was "printed in reasonably-sized font right at the top of the Instructions" that were allegedly deceptive); *Nelson,* 246 F. Supp. at 676 (dismissing claims where "every single representation plaintiff pleaded reliance on . . . is accompanied by language" clarifying the alleged misrepresentation); *Marine Midland Bank, N.A.*, 85 N.Y.2d at 27 (a statement is not deceptive to the extent that the information was fully disclosed or a plaintiff could "reasonably have obtained" the correct information).

### b.   The Sustainability Profiles Were Ambiguous As They Included Both Correct and Incorrect Information

The Second Circuit has previously stated that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list [and would] . . . expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging."  *Mantikas v. Kellogg Co.,* 910, F.3d 633, 637 (2d Cir. 2018) (holding that that the front label "falsely impl[ied] that the grain content is entirely or at least predominantly whole grain," and that the back label did not provide any information as to the actual "ratio of whole grain to white flour.").

While *Mantikas* held that a clarification *cannot* correct an unambiguously misleading representation, recent decisions within the Second Circuit have continued to recognize that "clarification *can* defeat [a] claim" for deceptive packaging if a front label contains an ambiguous

---

[12]The FAC contains the additional allegation that "full access to the underlying data on the [Higg] website was only made available to companies that pay a fee, significantly undermining H&M's claims about purported accessibility to consumers."  FAC, ¶ 15.  However, while some portions of the Higg website were behind paywalls, the relevant data for the H&M Sustainability Profiles was publicly accessible by simply clicking the link on H&M's website to "[c]lick here for full data and methodology information."  *See* Quartz Investigation; Kammerzell Decl., ¶¶ 11, 12.

representation. *See, e.g., Foster v. Whole Foods Mkt. Grp., Inc.*, 2023 WL 1766167, at *3 (E.D.N.Y. Feb. 3, 2023) (holding the statement "1000mg Per Serving" is ambiguous) (italics added); *Reyes v. Crystal Farms Refrigerated Distrib. Co.*, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019) (concluding that "made with real butter" was merely ambiguous, and any "confusion [was] sufficiently dispelled by the ingredients label on the back of the package," showing it was made with both real butter and butter-substitute fats). Here, the coding error – seen by only 0.2% of US consumers and affecting only 52 actual sales in New York (Kammerzell Decl., ¶¶ 8-10) – was ambiguous when viewed in context for two reasons.

First, any inaccuracy in a given profile affected one among a number of other categories. *See* FAC ¶ 10 (including global warming potential, fossil fuels use, water use, and water pollution). There is no evidence from the Quartz Investigation, and Plaintiffs certainly do not allege, that any *individual* Sustainability Profile contained errors in more than one category. Thus, while a Sustainability Profile on H&M's website may have inaccurately represented water usage data, this reproduction was clearly ambiguous given the corresponding (and accurate) data in the other three categories. Indeed, the example provided in the Quartz Investigation shows a garment inaccurately reporting "30% less water use" while accurately showing only "1% less water pollution." *See* Quartz Investigation. Logically, these two metrics should be correlated and the stark difference between the two illustrates the patent ambiguity manifested by H&M's coding error.

Second, each Sustainability Profile contained a level rating for the "materials environmental impact" from "Baseline" to "Level 3." *See* FAC, ¶ 9; Quartz Investigation. The level rating effectively functioned as a summary, or shorthand for consumers to determine the environmental impact of a product. Notwithstanding the coding error, the level rating for each product's "material environmental impact" was accurately represented. Kammerzell Decl., ¶ 7.

So even if the cardigan Commodore purchased showed "less" water usage when it actually used "more" water, the cardigan's "level" was still correctly categorized.

When considered in this context, the coding errors for any single category present consumers with ambiguity rather than a downright false statement of the product's environmental impact. *See Foster,* 2023 WL 1766167, at *4 (holding "*Mantikas* is inapposite because here the statements on the Product's front label, while ambiguous, are not false . . . [given] the context provided"). Thus, the FAC fails to sufficiently state a claim and Counts I and II should be dismissed to the extent they rely upon the Sustainability Profiles.

## C.      <u>Plaintiffs Fail to State a Claim for Unjust Enrichment</u>

Plaintiff pleads "unjust enrichment" generally without reference to the law of any particular state. Unjust enrichment is a state law doctrine and its pleading requirements vary by state. *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 411 (S.D.N.Y. 2011). Therefore, H&M is without notice of the specific state law(s) under which Plaintiffs bring this claim. Count III should be dismissed for this reason alone.

In New York, an unjust enrichment claim is available "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019). Decisions involving the alleged deceptive labeling of consumer goods have routinely dismissed unjust enrichment claims as duplicative or otherwise unavailable. *See, e.g., Koenig*, 995 F. Supp. 2d at 290–91 (dismissing unjust enrichment claim based on labeling milk "fat free"); *Kennedy v. Mondelēz Global LLC*, 2020 WL 4006197, at *15 (E.D.N.Y. July 10, 2020) ("[w]here a deceptive trade practices claim fails for failure to allege deception, an unjust enrichment claim fails, too."); *Nelson,* 246 F. Supp. at 676 (noting that duplicative claims for unjust enrichment will not survive a motion to dismiss

"even [when] pleaded in the alternative"); *Corsello v. Verizon N.Y., Inc.*, 944 N.Y.S.2d 732, 791 (2012) ("if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects."); *Borenkoff v. Buffalo Wild Wings*, Inc., 2018 WL 502680, at *5 (S.D.N.Y. Jan. 19, 2018) ("The essence of [plaintiffs'] unjust enrichment claim is . . . entirely duplicative of [plaintiffs'] GBL § 349 claim, and therefore the unjust enrichment claim must be dismissed under New York law.").

Here, there is no circumstance where Plaintiffs' other claims fail and yet Plaintiffs are still entitled, in equity and good conscience, to restitution from H&M.  The unjust enrichment claim is based upon the exact same alleged misrepresentations that support the other claims and is wholly duplicative.  *Compare* FAC, ⁋ 93 ("Plaintiff and members of the Class have suffered economic injury because [they] would not have purchased the Products or paid as much if the true fats had been known") *with* FAC, ⁋ 114 ("Plaintiff and Class members conferred a benefit in the form of monies paid on Defendant by purchasing the Products.").  Therefore, it is impossible that their other claims could fail, and Plaintiffs could still be entitled to recovery.

Insofar as the claims are based upon the same conduct and seek redress for the same injuries, Plaintiffs' unjust enrichment claim should be dismissed along with Counts I and II.  *See Foster,* 2023 WL 1766167, at *5 ("[e]ven if plaintiff had adequately alleged that the statements on the Product's labeling were actually false or misleading, his claim for unjust enrichment is dismissed as duplicative of his tort claims."); *see also Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 393–94 (S.D.N.Y. 2021) (unjust enrichment claim dismissed as "mere repackaging" of other claims); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 806–809 (S.D.N.Y. 2021) (dismissing breach of warranty, negligent misrepresentation, unjust enrichment for the same reasons as GBL claims); *Hudson Neurosurgery, PLLC v. UMR, Inc.*, WL 902107, at

*6 (S.D.N.Y. Mar. 28, 2022) (collecting cases); *Harris v. Mondelēz Global LLC*, 2020 WL 4336390, at *3 (E.D.N.Y. July 28, 2020) (dismissing claim for unjust enrichment in misleading product case where unjust enrichment claim was premised on the rejected theory of misrepresentation).

D.   **Plaintiffs Fail to State a Claim for Breach of Express Warranty**

Generally, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. N.Y. U.C.C. § 2–313(1)(a).  Where there are conflicting warranties, "the specific terms . . . must inform the more general term." *Chin v. General Mills, Inc.,* 2013 WL 2420455, at *7 (D. Minn. June 3, 2013) (*citing* N.Y. U.C.C. § 2–317); *see also* N.Y. U.C.C. § 2–317 ("Exact or technical specifications displace an inconsistent sample or model or general language of description.).

As discussed above, H&M makes no representation that its products are sustainable in the abstract, or that it has no harmful environmental impacts.  Quite the opposite, as H&M specifically explains that the term "conscious choice" means made with "at least 50% more sustainable materials – like organic cotton or recycled polyester."  These explicit qualifications negate any express warranty claim.  *See Nelson*, 246 F. Supp. at 676 (holding that even if "the images of a kangaroo and the Southern Cross constellation, the brand slogan, and the Foster's Beer website are sufficient affirmations of fact or promises to support a claim for breach of express warranty," breach of warranty claim fails because the labels explicitly identify where Foster's Beer is brewed.)

Aside from the Sustainability Profiles, none of H&M's marketing statements that "its products are 'conscious,' a 'conscious choice,' a 'shortcut to more sustainable choices'" (FAC, ₱ 2) can be properly considered as express warranties.  *See Yastrab v. Apple Inc.*, 2015 WL 1307163, at *7 (N.D. Cal. Mar. 23, 2015) (broad claims based on a website and advertising campaign failed

-20-

to "identify a specific and unequivocal written statement about the product that constitutes and explicit guarantee."); N.Y. U.C.C. § 2-313(1)(a)-(c) (fanciful elements do not rise to the level of an "affirmation of fact."); *see also Nigro v. Lee*, 63 A.D. 3d 1490, 1492 (3d Dep't 2009).  Indeed, such elements can properly be considered nothing more than puffery, which courts have repeatedly held do not constitute an express warranty.  *See Anderson v. Bungee Int'l Mfg. Corp.*, 44 F. Supp. 2d 534, 541 (S.D.N.Y. 1999).

E.      **Plaintiffs Lack Standing for Injunctive Relief**

To establish Article III standing for injunctive relief, the FAC must set forth an injury that is "actual or imminent, not conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "[T]o obtain prospective relief, a plaintiff 'must show a likelihood that he will be injured in the future.'"  *Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010) (quoting *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004)).  Either there must be a "substantial risk" that the future injury will occur, or the threatened injury must be "certainly impending."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).  "[A]llegations of possible future injury are not sufficient," (*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)), nor is "past exposure to illegal conduct" (*City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal brackets omitted) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974))).

Plaintiffs are seemingly aware of this standard but cannot circumvent the well-established pitfall denying their standing.  Prior decisions are clear that in order to establish standing for injunctive relief, the "critical" allegation is that the plaintiff intend to purchase the offending products again.  *See Duchimaza*, 2022 WL 3139898, at *6.  And the FAC does state precisely that: Plaintiffs "intend to, seek to, and will purchase the Products again[.]" FAC, ¶ 73.  However,

Plaintiffs cannot, in good conscience[13], end the assertion there.  Instead, they are forced to qualify their intent.  Plaintiffs' allegation, in full, reads: "Plaintiffs intend to, seek to, and will purchase the Products again and wish to do so with the assurance that the Product's representations are accurate." FAC, ₱ 73.  In other words, Plaintiffs will only suffer future harm when H&M changes its allegedly inaccurate representations.  This is precisely the type of conditional injury that is insufficient to confer Article III standing.  *See, e.g., Goldstein v. Walmart, Inc.*, 2022 WL 16540837, at *13 (S.D.N.Y. Oct. 28, 2022) (allegation that plaintiff "wishes to re-purchase" the products is insufficient to confer Article III standing for injunctive relief); *Barreto*, 518 F. Supp. 3d at 809 ("[Plaintiff] contends that she would purchase the soymilk product in the future if she 'could trust the label[]'. . . [which] is still insufficient to confer standing."); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 238–39 (S.D.N.Y. 2020) (holding that allegation that plaintiffs would purchase the products again when the defendant "change[d] its practices to mirror its advertising" was insufficient to establish likelihood of future injury"); *Duran v. Henkel of Am., Inc.,* 450 F. Supp. 3d 337, 356 (S.D.N.Y. 2020) (promise to "purchase a product if re-engineered or re-marketed does not show a real or immediate threat of future injury"); *Holve v. McCormick & Co., Inc*., 334 F. Supp. 3d 535, 553 n.10 (W.D.N.Y. 2018) (collecting cases).  Because the FAC does not allege that Plaintiffs intend to purchase the Products as currently labeled, it does not allege an injury sufficient to supply standing to enjoin future sales of the Products.  *See Patellos v. Hello Prods., LLC*, 523 F. Supp. 3d 523, 538 (S.D.N.Y. 2021).

---

[13]It would be incongruous for Plaintiffs to set forth the numerous ways in which they purport to reveal H&M's deceptive misrepresentations, and then claim that they will continue to be "deceived" by the statements regarding the sustainability of H&M's garments.  Plaintiffs are plainly aware of the environmental impact of the retail industry, and of H&M's own contributions, and if they do purchase another qualifying product it will be "with exactly the level of information that [they] claim [they were] owed from the beginning." *Berni v. Barilla S.P.A.*, 964 F.3d 141, 147 (2d Cir. 2020) (denying standing for injunctive relief).

Nor does the fact that unknowing class members might purchase H&M's products based on its allegedly deceptive statements establish standing. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) ("[T]he named class plaintiffs must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (quotations omitted)); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (*citing Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976) (citation omitted)).

Thus, Plaintiffs lack Article III standing to pursue injunctive relief, both on their own behalf and on behalf of the putative class, and this request should be stricken from the FAC.

## F.   <u>Plaintiffs Nationwide Class Claims Must be Dismissed or Stricken</u>

In the event any portion of the FAC survives H&M's Motion to Dismiss, H&M moves to strike any allegations by which Plaintiffs seek to represent a nationwide class.

Plaintiffs purport to bring two New York common law claims on behalf of a putative nationwide class.  FAC. ¶¶ 77, 113, 105.  Plaintiffs' attempt to bring New York common law claims on behalf of consumers nationwide is improper and should be rejected.  New York common law cannot be exported to other states any more than New York's statutes could be.  *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *18 (E.D.N.Y. Aug. 29, 2013) (common law claims "arising under New York law" cannot apply to plaintiffs injured in other states and therefore "must be dismissed as to non-New York . . . putative class members").

-23-

Moreover, for the two common law claims Plaintiffs purport to bring on behalf of a nationwide class – breach of express warranty and unjust enrichment – the common laws of the fifty states materially differ. *See, e.g., In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 147 (S.D.N.Y. 2008) ("Most of the courts that have addressed the issue have determined that . . . breach-of-warranty laws in the fifty states differ in relevant respects."). For class members who purchased the Products outside New York, the jurisdiction with the greater interest is indisputably the state of purchase. *See id.* at 149. Each of the non-New York class members is domiciled outside of New York and the transactions at issue took place outside of New York. Thus, at a minimum, Plaintiffs' nationwide class allegations should be stricken as to all non-New York class members.

The Court need not wait until class certification to strike Plaintiffs' nationwide class allegations because it is clear (even at the pleading stage) that "any potential common issues of fact cannot overcome the problem." *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946-49 (6th Cir. 2011) ("[t]hat the motion to strike came before the plaintiffs had filed a motion to certify the class does not by itself make the court's decision reversibly premature"); *see also Route v. Mead Johnson Nutrition Co.*, 2013 WL 658251, at *8 (C.D. Cal. Feb. 21, 2013) ("where the matter is sufficiently obvious from the pleadings, a court may strike class allegations."); *In re IPO Sec. Litig.*, 544 F. Supp. 2d 277, 288 (S.D.N.Y. 2008) (striking class action allegations prior to class certification).

Accordingly, H&M respectfully requests that the Court address these issues at the outset of the litigation to either dismiss these the nationwide class allegations under Rule 12(b)(6) or strike them from the FAC under Rule 12(f).

-24-

## **CONCLUSION**

For all the foregoing reasons, H&M's motion to dismiss the FAC should be granted. In the event any portion of the FAC survives H&M's Motion to Dismiss, H&M respectfully requests that the Court strike any allegations by which Plaintiffs seek to represent a nationwide class and/or obtain injunctive relief.


New York, New York
February 21, 2023

**NIXON PEABODY LLP**

By:     */s/ Erin T. Huntington*
    Staci Jennifer Trager (*pro hac vice*)
    300 S. Grand Avenue, Suite 4100
    Los Angeles, CA 90071-3151
    Tel.: (213) 629-6041
    strager@nixonpeabody.com

    Erin T. Huntington
    677 Broadway
    Albany, New York 12207
    Tel.: (518) 427-2650
    ehuntington@nixonpeabody.com

    Carlo F. Bustillos (*pro hac vice* pending)
    One Embarcadero Center, 32nd Floor
    San Francisco, CA 94111
    Tel.: (415) 984-8448
    cbustillos@nixonpeabody.com

    *Attorneys for Defendant H&M Hennes &*
    *Mauritz LP*