**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHELSEA COMMODORE and RAKEEDHA SCARLETT, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>   v.<br><br>H&M HENNES & MAURITZ LP,<br><br>               Defendant. | Case No. 7:22-cv-06247-CS |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Dated: March 17, 2023

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*pro hac vice* forthcoming)
Neal J. Deckant (NY State Bar No. 5026208)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ltfisher@bursor.com
       ndeckant@bursor.com

**TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

LEGAL STANDARD................................................................................................. 6

ARGUMENT ............................................................................................................. 7

I.      H&M'S ARGUMENTS RELY ON QUESTIONS OF FACT
        IMPROPERLY DECIDED ON A MOTION TO DISMISS ............................... 7

II.     PLAINTIFFS SUFFICIENTLY ALLEGE VIOLATIONS OF N.Y. GBL
        §§ 349 AND 350 ............................................................................................... 8

        A.      The Information In H&M's Sustainability Profiles Is False And
                Misleading To A Reasonable Consumer ................................................. 9

        B.      H&M's Statements About The Composition Of Its Conscious
                Choice Products Are Misleading To A Reasonable Consumer ........................... 12

        C.      H&M'S Statements About Its Recycling Program Are Misleading
                To A Reasonable Consumer ................................................................... 15

III.    PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT ................................ 16

IV.     PLAINTIFFS SUFFICIENTLY ALLEGE BREACH OF EXPRESS
        WARRANTY ................................................................................................. 17

V.      PLAINTIFFS HAVE STANDING TO PURSUE INJUNCTIVE RELIEF .................... 18

VI.     THE COURT SHOULD DENY DEFENDANT'S MOTION TO STRIKE
        PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS ............................................ 19

CONCLUSION............................................................................................................ 21

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ 6

*Atik v. Welch Foods, Inc.*,
  2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016) ........................................................ 8

*Barnet v. Drawbridge Special Opportunities Fund LP*,
  2014 WL 4393320 (S.D.N.Y. Sept. 5, 2014) ........................................................ 16

*Belfiore v. Proctor & Gamble Co.*,
  311 F.R.D. 29 (E.D.N.Y. 2015) ............................................................................ 16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 554 (2007) ......................................................................................... 6, 7

*Bernstein v. Cengage Learning Inc.*,
  No. 19 Civ. 7541, 2020 WL 5819862 (S.D.N.Y. Sept. 29, 2020) ............................ 20

*Buonasera v. Honest Co.*,
  208 F. Supp. 3d 555 (S.D.N.Y. 2016) .................................................................... 8

*Chenensky v. N.Y. Life Ins. Co.*,
  2011 WL 1795305 (S.D.N.Y. 2015) ...................................................................... 19

*Duran v. Henkel of Am., Inc.*,
  450 F. Supp. 3d 337 (S.D.N.Y. 2020) .................................................................... 19

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ........................................................................... 20

*Elias v. Ungar's Food Products, Inc.*,
  252 F.R.D. (D.N.J. June 30, 2008) ........................................................................ 21

*Express Gold Cash, Inc. v. Beyond 79, LLC*,
  2019 WL 4394567 (W.D.N.Y. Sept. 13, 2019) ....................................................... 10

*Fair Hous. Just. Ctr. Inc. v. Lighthouse Living LLC*,
  2021 WL 4267695 (S.D.N.Y.  Sept.  20, 2021) ...................................................... 10

*Gordon v. Target Corp.*,
  2022 WL 836773 (S.D.N.Y. 2022) ...................................................... 13, 14, 15, 16

*Haraden Motorcar Corp. v. Bonarrigo*,
    2020 WL 1915125 (N.D.N.Y. Apr. 20, 2020)...................................................... 16

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009) ............................................................................... 6

*Hobbs v. Knight-Swift Transp. Holdings, Inc.*,
    2022 WL 118256 (S.D.N.Y. Jan. 12, 2022) ..................................................... 21

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
    2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ................................................... 8

*In re Nissan Radiator/Transmission Cooler Litig.*,
    2013 WL 4080946 (S.D.N.Y. May 30, 2013) .................................................. 17

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    2008 WL 1956267 (S.D.N.Y. May 1, 2008) .................................................... 17

*In re Tronox Sec. Litig.*,
    2010 WL 2835545 (S.D.N.Y. June 28, 2010) .................................................. 19

*Leeds v. Meltz*,
    85 F.3d 51 (2d Cir. 1996) ................................................................................. 6

*Lugones v. Pete & Gerry's Organic, LLC*,
    440 F. Supp. 3d 226 (S.D.N.Y. 2020) ............................................................ 18

*Lyons v. New York*,
    2016 WL 5339555 (S.D.N.Y. 2016) ................................................................ 7

*Maddison v. Comfort Sys. USA (Syracuse), Inc.*,
    2018 WL 679477 (N.D.N.Y. Feb. 1, 2018)................................................ 20, 21

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018) ........................................................................ 5, 11

*Maywalt v. Parker & Parsley Petroleum Co.*,
    147 F.R.D. 51 (S.D.N.Y.1993).......................................................................... 21

*Membler.com LLC v. Barber*,
    2013 WL 5348546 (E.D.N.Y. Sept. 23, 2013) ................................................ 16

*Ortiz v. Sig Sauer, Inc.*,
    448 F. Supp. 3d 89 (D.N.H. 2020) .................................................................. 20

*Parker v. Time Warner Ent. Co., L.P.*,
    331 F.3d 13 (2d Cir. 2003) .............................................................................. 21

*Quinn v. Walgreen Co.*,
  958 F. Supp. 2d 533 (S.D.N.Y. 2013) ............................................................... 8

*Rapoport-Hecht v. Seventh Generation, Inc.*,
  2017 WL 5508915 (S.D.N.Y. Apr. 28, 2017) ................................................... 17

*Reynolds v. Lifewatch, Inc.*,
  136 F. Supp. 3d 503 (S.D.N.Y. 2015) ............................................................. 19

*Shaw v. Hornblower Cruises & Events, LLC*,
  2022 WL 16748584 (S.D.N.Y. Nov. 7, 2022) ............................................. 17, 20

*Wang v. Hearst Corp.*,
  2012 WL 2864524 (S.D.N.Y. July 12, 2012) .................................................... 19

*Williams v. Gerber Prod. Co.*,
  552 F.3d 934 (9th Cir. 2008) ............................................................................. 8

## STATUTES

N.Y. Gen. Bus. Law § 349 ........................................................................................ 8

N.Y. Gen. Bus. Law § 350 ........................................................................................ 8

N.Y. U.C.C. § 2–313(1)(a) ...................................................................................... 18

## RULES

Fed. R. Civ. P. 8(d)(3) ............................................................................................ 16

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 6, 10

## INTRODUCTION

Plaintiffs Chelsea Commodore and Rakeedha Scarlett ("Plaintiffs") filed their First Amended Complaint ("FAC") against Defendant H&M Hennes & Mauritz LP ("H&M").  Dkt. No. 17.  Plaintiffs bring this action on behalf of themselves and others similarly situated who purchased H&M clothing containing either: (i) Sustainability Profiles, which uniformly displayed falsified data, or (ii) certain "Sustainability Misrepresentations" misleadingly touting positive environmental attributes of the Products, including that the Products are purportedly "conscious," a "shortcut to sustainable choices," and are made from "sustainable materials," among other representations.  FAC ¶¶ 1-3.

Defendant's motion should be denied in its entirety.  Initially, Defendant repeatedly makes self-serving statements regarding consumers' perceptions and expectations, all of which constitute factual matters that cannot be resolved at this stage.  Further, Defendant's key argument is that the "foundation of this entire case rests on" Plaintiffs' "strategic omission of key wording in H&M's advertising."  MTD at 1.  That is, Defendant argues that "[b]y removing the word 'more' from H&M's statement 'at least 50% more sustainable materials,' Plaintiffs alter H&M's comparative statements and leverage a repackaged version as a basis to claim widespread deception."  *Id.* at 1-2 (citing Huntington Decl., Ex. 2, *Conscious Choice Explained*). This characterization ignores the falsified data in the Sustainability Profiles and picks one misleading statement out of many alleged in the FAC.  Further, Defendant is also wrong when it broadly argues that Plaintiffs' allegations are inaccurate.  Defendant introduces various webpages reflecting content as of February 2023, but Defendant neglects to mention that its website *did in fact* previously state that those Products contained "at least **50% sustainably**

**sourced materials**" or "at least **50% sustainable materials**," as accurately alleged in the FAC.[1] Defendant also fails to include various marketing materials referenced in the FAC, thereby presenting an incomplete record.  Defendant thus improperly seeks dismissal of Plaintiffs' case based on its own cherry-picked version of Plaintiffs' pleading.[2]

The rest of Defendant's arguments also fail.  Plaintiffs have sufficiently alleged their claims for unjust enrichment, breaches of warranty, and violations of New York's consumer protection laws.

## BACKGROUND

Sustainability sells.  "Indeed, research has found that products highlighted as 'sustainable' sell faster and consumers are willing to pay more for sustainable products."  FAC ¶¶ 4, 51-53.  And "consumers largely rely on brand websites and product tags to understand whether a brand is sustainable."  *Id.* ¶ 55.  H&M "has emphasized sustainability through its website, product tags, and other marketing," including the development of the line of "Conscious Collection" Products at issue in this case, hiding wasteful, resource-intensive, and dirty practices with false and misleading representations.  *See id.* ¶¶ 33-37, 41, 44-46, 54.

Indeed, "H&M has created an extensive marketing scheme to 'greenwash' its Products, in order to represent them as environmentally-friendly when they are not."  *Id.* ¶ 5.  Specifically, H&M designed its labeling, marketing, and advertising to mislead consumers about its Products' environmental attributes, through the use of false and misleading "environmental scorecards" for

---

[1] In any event, Defendant's argument misses the point, as that statement is still misleading to reasonable consumers, particularly when viewed in context with H&M's greenwashing marketing campaign.

[2] Defendant elsewhere broadly contends that "Plaintiffs' allegations are carefully crafted to omit the full text and context of H&M's representations."  MTD at 2-3.  But Defendant only provides a single example as to a marketing phrase contained in Exhibit 2, pertaining to the Products containing "at least 50% more sustainable materials."

its products called "Sustainability Profiles," as well as through the marketing of various "Sustainability Misrepresentations" made through the use of green hang tags, in-store signage, and online marketing.  *Id.* ¶¶ 1-3.

"The Sustainability Profiles were prominently incorporated into H&M's website and were displayed on the product listing for hundreds of H&M items."  *Id.* ¶ 1.  But after an investigation published by Quartz discovered that H&M falsified information that did not comport with the underlying data on the Higg website, "H&M removed all of the Sustainability Scorecards presented for the Products."  *Id.* ¶¶ 8, 12.  H&M falsified the underlying data of each of its Sustainability Profiles to incorrectly present negative values as positive values for various environmental attributes "because it knew that they were material and would be relied upon by reasonable consumers, who care about global warming potential, fossil fuel use, and water use, among other environmental considerations."  *Id.* ¶ 16.  For example, "H&M's website showed a particular product as being produced with 30% less water, but the Higg website showed that the item was 'actually made with 31% more water, making it worse than conventional materials.'"  *Id.* ¶ 9.

"In other words, the data in the Sustainability Profile was thus presented incorrectly because 'more' was misrepresented as 'less.'"  *Id.*  "This issue is not isolated to water usage alone, and there are similar misrepresentations for each category of the Sustainability Profile," including for example that Products had "'less global warming potential,' 'less fossil fuels use,' and 'less water' (among others), when in fact numerous products consume 'more' of those resources."  *Id.* ¶ 10.  "In fact, Quartz further found that a majority of the Products are no more sustainable than items in the main collection, which are also not sustainable."  *Id.* ¶ 11.

3

As previously noted, H&M proliferates its extensive greenwashing campaign with various Sustainability Misrepresentations concerning the purportedly sustainable nature of its Products. *Id.* ¶ 2. Specifically, H&M claims that its products are "conscious," a "conscious choice," a "shortcut to sustainable choices," made from "sustainable materials," "close the loop," and that H&M will prevent its textiles "from going to landfill" through its recycling program. *Id.* "Other leading brands acknowledge the fundamental inconsistency of sustainability claims from fast-fashion giants and choose to abstain from using terms such as 'sustainable' and 'conscious' in connection with its products and brand so as to not mislead consumers with greenwashing claims." *Id.* ¶ 41. Competing large retailers "offer comparable designs as H&M each fashion season," but, importantly, they "do not, however, make sustainability claims in marketing otherwise similar product offerings." *Id.* ¶¶ 58-59.

H&M, on the other hand, misleads consumers with greenwashing terms doubled down with its deceptive overuse of the color green. *Id.* ¶¶ 17, 44. H&M widely uses the term "sustainable," without any qualifiers, including, for example phrases like "sustainable choices," "selection of sustainable fashion pieces," "organic and sustainable clothing." *See id.* ¶ 2. In one such statement, H&M represents that its Products contain "at least 50% sustainable materials, such as organic cotton and recycled polyester." *Id.* ¶ 18. But Defendant includes Products that are comprised of indisputably unsustainable synthetic, plastic-based materials, which shed toxic microfibers, "are not biodegradable or recyclable, require loads of energy for extraction and processing, and are derived from nonrenewable resources." *Id.* ¶¶ 18, 47.

Additionally, "Defendant touts a recyclability program with bins in stores to convince consumers that they can purchase products without adding to the significant waste of the fast-fashion industry." *Id.* ¶ 20. But due to "the fibers used in the Products," the "vast majority of

4

the Products are not in fact recyclable" and "[i]n practice, H&M recycles only a small portion of

what it collects in its in-store 'recycle bins.'" *Id.* ¶¶ 22, 25. Defendant also argues that it

employs circular solutions and that its practices "stop[] [plastic waste] from ending up in

landfills," but its practices take bottles out of circular recycling streams, thus "*hasten*[ing] the

path to landfills." *Id.* ¶¶ 24-31.

"By falsifying the Sustainability Profiles and making the Sustainability

Misrepresentations, Defendant has misrepresented the nature of its products, at the expense of

consumers who pay a price premium in the belief that they are buying truly sustainable and

environmentally friendly clothing." *Id.* ¶ 3.

On October 27, 2022, Defendant filed a pre-motion conference letter. Dkt. No. 7. In its

pre-motion letter, Defendant primarily argued that Plaintiffs "fail[ed] to allege any misleading

acts by H&M, or any cognizable injury." PML at 2. As to the Sustainability Profiles, Defendant

argued that "no reasonable consumer would be misled by H&M's website when the link to the

underlying data was readily and prominently available." PML at 2. As to the Sustainability

Misrepresentations, Defendant argued that "no reasonable consumer would view these

statements in context as misleading" because those statements "educat[e] consumers." PML at

2.

During the pre-motion conference, the Court indicated its skepticism regarding

Defendant's arguments. The Court questioned "how defendant[], with a straight face, could

move to dismiss on the ground in the letter." Tr. at 2:21-3:10. First, the Court explained that

under *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018), "If the defendant says X and

the truth is not X, you shouldn't have to go down a rabbit hole to find that out." *See* Tr. at 2:21-

3:10; 6:7-15. Second, the Court indicated that Defendant's statements "sound[ed] like"

"marketing," as opposed to "educational" statements.  Tr. at 7:4-7.  The Court otherwise indicated that the Plaintiffs could potentially clarify the allegations relating to the recyclability representations, and should provide "any underlying facts" to support a price premium theory. Tr. at 7:8-8:7.

On January 6, 2023, Plaintiffs filed the First Amended Complaint ("FAC").  Dkt. No. 17. The FAC added an additional Plaintiff and cause of action, directly addressed the Court's concerns, and otherwise bolstered Plaintiffs' allegations.  On February 21, 2023, Defendant moved to dismiss the FAC.  Dkt. No. 23 ("MTD").

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

"When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.  The court must "take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).  However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of action." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662) (internal quotation marks omitted).  A plaintiff must provide "more than labels and conclusions" to show he is

6

entitled to relief.  *Twombly*, 550 U.S. at 555."  *Lyons v. New York*, 2016 WL 5339555, at *3 (S.D.N.Y. 2016).

## ARGUMENT

"Based on Defendant's extensive greenwashing campaign, a reasonable consumer would expect the Products to be sustainable, that H&M provides accurate information about its Products' attributes and environmental impact, that H&M's Conscious Collection Products do not massively contribute to harmful environmental impacts, and that H&M's recyclability program avoids the piling of clothes in landfills.  Yet, neither before or at the time of purchase does Defendant notify consumers like Plaintiffs that its Products are not sustainable, that it includes inaccurate information about its Products, that the majority of its Products are not recyclable, and that it is one of the industry's greatest polluters."  FAC ¶ 40.

## I.   H&M'S ARGUMENTS RELY ON QUESTIONS OF FACT IMPROPERLY DECIDED ON A MOTION TO DISMISS

H&M contends that Plaintiffs "devote much of the FAC to detailing the various harmful effects of H&M's products."  MTD at 9.  What Defendant fails to mention is that this level detail is provided to justify the allegation that H&M "engaged in consumer-oriented conduct that is deceptive or misleading in a material way" because "Defendant seeks to differentiate itself from other fashion products by greenwashing the Products and its brand."  FAC ¶¶ 97-98.  Plaintiffs allege that "[t]his is a deceptive act and an unfair practice because Defendant, one of fashion's greatest polluters, knows that the Products are not sustainable and contribute to significant negative environmental harms over the entire product life cycle from cultivation to incineration."  *Id.*  The more than 15 pages of facts in the FAC supporting these allegations are more than enough at this stage.

7

H&M's arguments about whether the information would actually mislead consumers or create reliance for injury are questions for the finder of fact and are inappropriate for a motion to dismiss.  *See*, *e.g.*, *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) ("whether a particular act or practice is deceptive is usually a question of fact" best suited for a jury); *accord Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016).  Dismissal is warranted only in a "rare situation" where "it [is] impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived."  *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008); *Atik v. Welch Foods, Inc.*, 2016 WL 5678474, at *8 (E.D.N.Y. Sept. 30, 2016) (adopting the "rare situation" standard); *see also In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (for a court to grant a motion to dismiss, the label's context must meet the "heavy burden of 'extinguish[ing] the possibility' that a reasonable consumer could be misled") (citation omitted).  Here, questions of fact exist as to: (1) whether a reasonable consumer would be deceived by the falsified Sustainability Profiles; (2) whether H&M's claims that the Conscious Collection Products are made with "at least 50% sustainable materials, such as organic cotton and recycled polyester," is misleading; (3) whether H&M's claims that using recycled polyester in the Conscious Collection Products "stops [plastic waste] from ending up in landfills," is misleading; and (4) whether it is misleading for H&M to use the phrases "conscious," "conscious," a "conscious choice," a "shortcut to sustainable choices," made from "sustainable materials," and "close the loop" to describe the purported environmental benefits of the Conscious Collection Products.

## II.     PLAINTIFFS SUFFICIENTLY ALLEGE VIOLATIONS OF N.Y. GBL §§ 349 AND 350

Defendant contends that Plaintiffs' GBL claims are implausible.  Defendant raises a series of fact-intensive arguments concerning both the Sustainability Profiles and the

Sustainability Misrepresentations.  In addition to asking the Court to raise inferences and decide factual disputes in Defendant's favor, Defendant also asks the Court to negate Plaintiffs' well-pleaded allegations and circumvent binding Second Circuit law.  The Court should reject each Defendant's improper arguments.

>    A.    **The Information In H&M's Sustainability Profiles Is False And Misleading To A Reasonable Consumer**

First and foremost, the FAC alleges, and H&M admits, that the Sustainability Profiles contained false information claiming that the Products are more environmentally friendly than they actually are.  MTD at 4.  This alone is enough for Plaintiffs' GBL claims to survive a motion to dismiss.

In addition, Plaintiffs sufficiently allege that the Sustainability Profiles containing misreported data concerning various environmental attributes would mislead a reasonable consumer.  Defendant's arguments to the contrary depend on either injecting facts not in the complaint, or overlooking various well-pleaded allegations.  First, Defendant maintains that it merely committed a "coding error," but as the Court noted, "there is nothing in the complaint about a coding error" – and regardless, it is irrelevant "whether [the publishing of false information] was intentional or not."  Tr. at 6:7-16.  Second, Defendant argues that there is "no indication that the Sustainability Profiles themselves deceived any consumers regarding the environmental attributes of the Conscious Choice products."  MTD at 14.  This argument is also contrary to Plaintiffs' allegations, which indicate that both Plaintiffs "reviewed and considered" and "reasonably relied" on H&M's Sustainability Profiles, as well as the labeling, packaging, and marketing materials of the Products they purchased.  FAC ¶¶ 69-71.  Plaintiffs further allege that "these representations were part of the basis of the bargain in that they would not have purchased the Products, or would not have purchased it on the same terms, had they known that

these representations were false and misleading."  *Id*.  Third, Defendant argues that the Court

should find that only the water usage statistics were misreported.  MTD at 15 n.11.  But Plaintiffs

allege that the "issue is not isolated to water usage alone, and there are similar misrepresentations

for each category of the Sustainability Profile."  FAC ¶¶ 10.

Neither should the Court accept Defendant's own factual statements concerning the scope

and nature of its misreported data, including the number of Products with Sustainability Profiles

over the class period, the specific Products that contained misreported data concerning water

usage or other factors, and the number of consumers who were exposed to misreported data.  *See*

MTD at 15 n.11.[3]  The Court should reject Defendant's efforts to minimize the patently

misleading nature of its falsified Sustainability Profiles.

Next, Defendant tries to shift responsibility to consumers, effectively arguing that it is the

consumers' fault that they were deceived by misreported data, when they should have known

better and conducted further research.  *See* MTD at 14-16.  Defendant argues that it is

implausible for consumers "who care about the environment" to be deceived when the

"Sustainability Profiles were just one of several reference points for consumers to evaluate the

environmental impact of their purchases" and accompanied by "a link directly underneath the

results" where consumers could find the correct data on a third-party website.  *Id*

---

[3] Defendant introduces a litany of purported facts regarding the Sustainability Profiles pursuant to a declaration of its "Head of Sustainability," but it provides no basis for the Court to properly consider the factual averments contained in that declaration in resolving a Rule 12(b)(6) motion. *See* MTD at 15 n.11.   *See Fair Hous. Just. Ctr. Inc. v. Lighthouse Living LLC*, 2021 WL 4267695, at *3 (S.D.N.Y.  Sept.  20, 2021) (holding it is "well established that a court may not 'consider factual averments contained in affidavits' in determining a motion to dismiss") (citation omitted); *see also Express Gold Cash, Inc. v. Beyond 79, LLC*, 2019 WL 4394567, at *4 (W.D.N.Y. Sept. 13, 2019) ("However, the Court cannot consider the facts set forth in the Landy Declaration on a Rule 12(b)(6) motion.").

Defendant's arguments contravene the applicable legal standard.  Simply because Plaintiffs allege H&M targeted consumers who care about the environment does not mean that those consumers have specialized knowledge that insulates them from deception, or that they should be required to do further research on a third-party website – with a paywall – to verify H&M's marketing claims.  *See* FAC ¶ 15.  Ultimately, the existence of a third-party website with additional information concerning the environmental attributes of Products does not make the misreported data on H&M's website any less false or misleading.  Indeed, reasonable consumers would expect that external information to confirm H&M's representations, and they are not required to "look beyond misleading representations" to "discover the truth."  *See Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018).

Even if reasonable consumers noticed the inconspicuous link to the third-party website, they would expect that external information to confirm the representations on H&M's website. *See id*. ("Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.").  H&M simply cannot demand that consumers consult and mine additional data on a third-party website to "correct misleading information" prominently displayed on H&M's website.  *See id*. ("We conclude that a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box.").

In an attempt to escape the binding ruling in *Mantikas*, Defendant now asserts that the Sustainability Profiles are "ambiguous."  *See* MTD at 17.  Even without the presumption in favor of Plaintiffs' allegations operative on this motion, Defendant's interpretation is strained.  *See* Tr. at 3:3:3-10 (stating that under *Mantikas*, "even when the falsity is not black and white, like it is

here, the Circuit says" that "you shouldn't have to go down a rabbit hole").  Defendant nonetheless argues that, "[w]hen considered in this context, the coding errors for any single category present consumers with ambiguity rather than a downright false statement of the product's environmental impact."  Defendant builds its contention upon two faulty premises.

First, Defendant improperly leverages purported facts in a declaration, for which it provides no basis for the Court to consider, to assert that "the level rating for each product's 'material environmental impact' was accurately represented."  *Id.* (citing Kammerzell Decl., ⁋ 7).

Second, Defendant bases its claim of "ambiguity" on the assertion that accurate information was also included in the Sustainability Profiles.  MTD at 16.  Even if this were true, the presence of accurate information does nothing to alter the misleading nature of the publication of the false information.  If a consumer relies on the Sustainability Profiles as whole, they are necessarily relying on the false information.

**B.      H&M's Statements About The Composition Of Its Conscious Choice Products Are Misleading To A Reasonable Consumer**

Plaintiffs sufficiently allege that H&M's statements regarding its Conscious Collection would mislead a reasonable consumer.  Defendant, unable to directly contest these allegations, relies on contradictory and unavailing arguments.  First, H&M attempts to deflect from its misleading and greenwashing sustainability claims by describing the claims as a comparison to other products.  MTD at 7-8.  As described above, H&M attempts to rewrite the pleadings by adding the word "more" where it did not exist on the website or in the FAC.  Without the qualifier "more," H&M's attempt to characterize the statement at issue as a comparison falls flat. This attempt to include a different version of the website than the one described in the FAC, while failing to include the other misleading marketing materials describe in the FAC speaks to the difficulty H&M has trying to prove that the statements at issue are not misleading to

consumers.  The statement actually at issue in this Motion to Dismiss is plainly misleading as it alleges the use of sustainable materials, when materials that were "indisputably unsustainable," like synthetics, were used to make the Products.  FAC ¶ 18.

Even if the FAC was referring to the 2023 statement, and it is not, the FAC would still sufficiently allege a reasonable consumer would be misled.  The FAC states clearly that "Defendant includes Products [in its Conscious Collection] that are comprised of indisputably unsustainable materials, like polyester.  Products containing sometimes even up to 100% polyester are not sustainable, as polyester does not biodegrade, sheds toxic microfibers, and is not recyclable." *Id.* ¶ 18.  Contrary to Defendant's argument that "a reasonable reading of H&M's advertisements is that the Conscious Choice collection uses materials that are *more* sustainable than those in comparable garments" (MTD at 7, emphasis in original), the FAC clearly alleges that many Conscious Collection Products "contain a higher percentage of synthetics than the main collection," making them *less* sustainable than comparable garments. FAC ¶ 19.  Thus, even under Defendant's heavily manipulated version of the pleadings, Plaintiffs sufficiently allege that a reasonable consumer would be misled by H&M's statements.

H&M's reliance on *Gordon v. Target Corp.* is misplaced.  MTD at 9.  In *Gordon*, the plaintiff alleged GBL violations for the labelling of Target's "transitional formula" for young children.  2022 WL 836773, *3 (S.D.N.Y. 2022).  The plaintiff did not point to any misstatements, but instead alleged the transitional formula was essentially the same as Target's baby formula, was labeled to appear similar to the baby formula in order to give the false impression that the transitional formula was more heavily regulated, and that the transitional formula was less nutritious than regular whole milk despite being marketed as a healthier alternative.  *Id.* at *4.  For the last claim, the plaintiff cited published studies about the alleged

lack of nutritional value of the transitional formula compared to a whole food diet.  *Id*. at *10.

The district court granted the motion because the plaintiff alleged no misrepresentations to

support these theories and instead "seem[ed] to take issue with the Transition Formula industry

as a whole – as evidenced by the academic articles to which Plaintiff cites, none of which is

specific to Defendant or the Product." *Id.*

Here, H&M attempts to characterize the section of the FAC providing background on the

negative environmental impact of the fashion industry as the *only* allegation that could give rise

to an omissions claim under the GBL.  One look at the FAC dispels this theory.  First, discussing

H&M's broad negative environmental impact provides direct evidence for Plaintiffs' claim that

H&M's greenwashing statements are false or misleading.  FAC ¶¶ 33-50.  Plaintiffs necessarily

start with the negative environmental impact of the fast fashion industry as a whole but then

move immediately to clear allegations about environmentally harmful practices specific to

H&M.  *Id.* ¶¶ 33-50.  Crucially, unlike the plaintiff in *Gordon,* Plaintiffs allege multiple

misrepresentations by H&M, including that the Conscious Collection Products contain "at least

50% sustainable materials, such as organic cotton and recycled polyester," misleading statements

related to the amount of waste purportedly eliminated by H&M's recycling program, the

misleading use of sustainability buzzwords such as "recycling," "circular," and "closing the

loop," and the publishing of <u>false</u> sustainability statistics.  FAC ¶¶ 18, 21-28, 31.  Also distinct

from *Gordon*, where the plaintiff only alleged that the product at issue implied that it was more

nutritious than it actually was, H&M's omissions are directly connected to an affirmative

campaign, including the development of an entire product line, to deceive consumers into

believing that the Conscious Collection Products represent a turn by H&M away from their

harmful environmental practices to environmentally sustainable ones.  The omissions do not

14

involve consumers' knowledge or lack of knowledge of the entire fast fashion industry or even

the broader environmental harm caused by H&M.  Instead, the omissions alleged, bolstered by

multiple misrepresentations, seek to differentiate H&M "from other fashion products," including

H&M's own mainline products, "by greenwashing the [Conscious Collection] Products and its

brand."  FAC ¶ 90.

### C.    H&M'S Statements About Its Recycling Program Are Misleading To A Reasonable Consumer

Defendant then attempts to cast doubt on Plaintiffs' clear allegations of H&M's

misleading statements related to its "Recycle at H&M" campaign, primarily by focusing on the

availability of recycling bins in H&M stores.  Defendant argues that the clothing processed in

these bins meets the definition of "recyclable" in the FTC's "Green Guides."  MTD at 12-13.

This mischaracterizes Plaintiffs' argument.  Plaintiffs are not challenging H&M's use of the

word "recyclable," as a term of art, but rather allege that the marketing of the "Recycle at H&M"

campaign and H&M's claims about using recycled materials in its products are misleading to a

reasonable consumer.  Plaintiffs adequately allege that both practices are part of a larger

greenwashing campaign designed to mislead consumers about H&M's environmental impact.

The FAC specifically cites the "high use of synthetic materials such as polyester" in the

Conscious Collection Products as "particularly concerning" with respect to H&M's sustainability

claims.  FAC ¶ 19.  The FAC alleges this practice by H&M, which produces significant

environmental harm, also makes H&M's claims about its recycling program misleading because

it "convince[s] consumers" that they can "purchase products without adding to the significant

waste of the fast-fashion industry."  *Id.* ¶ 20.  The FAC bolsters the allegation with several facts

regarding the waste created by H&M products.  *Id.* ¶¶ 24-28.  The figures alleged stand in sharp

contrast to H&M's misstatements, specifically that "that its use of recycled polyester "stops

[plastic waste] from ending up in landfills," and its use of environmental advertising phrases

"such as 'recycling,' 'circular,' and 'closing the loop'" to describe its practices. *Id.* ¶¶ 30-31.

The FAC alleges the gap between H&M's marketing and the reality of the waste it produces is

"deceptive" and "misleading in a material way." *Id.* ¶ 89. This Circuit requires that "[c]ourts

view each allegedly misleading statement in light of its context on the product label or

advertisement as a whole, and that [t]he entire mosaic is viewed rather than each tile separately."

*Gordon*, 2022 WL 836773, at *11 (quoting *Belfiore v. Proctor & Gamble Co.*, 311 F.R.D. 29, 53

(E.D.N.Y. 2015)) (internal quotation marks omitted). Here, that context is the other misleading

statements made by H&M and its larger greenwashing campaign, embodied in its Conscious

Choice Products and the harm they do to the environment.

## III.   PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT

Defendant argues that Plaintiffs' unjust enrichment claims must be dismissed because

"[t]he unjust enrichment claim is based upon the exact same alleged misrepresentations that

support the other claims and is wholly duplicative." MTD at 19. But this argument defies a

plain reading of Fed. R. Civ. P. 8(d)(3), which provides that "[a] party may state as many

separate claims or defenses as it has, regardless of consistency." *See also Barnet v. Drawbridge*

*Special Opportunities Fund LP*, 2014 WL 4393320, at *22 (S.D.N.Y. Sept. 5, 2014) (explaining

"a claim for unjust enrichment may be pleaded in the alternative to other claims"). It is

premature, at this stage, to conclude whether Plaintiff's unjust enrichment claim will be

duplicative of other claims. *See Haraden Motorcar Corp. v. Bonarrigo*, 2020 WL 1915125, at

*10 (N.D.N.Y. Apr. 20, 2020) ("Plaintiff could, for instance, ultimately fail to prove its fraud or

conversion claims while still establishing that Defendant received a benefit … that [o]ught to in

equity and good conscience be turned over to [Plaintiff].") (citation omitted); *Membler.com LLC*

*v. Barber*, 2013 WL 5348546, at *14 (E.D.N.Y. Sept. 23, 2013) ("While Plaintiff's unjust

enrichment and conversion claims may ultimately seek duplicative relief, at [the motion to dismiss] stage the Court will not dismiss the unjust enrichment claim.").

In time, Plaintiff's unjust enrichment claim may become duplicative of Plaintiffs' other claims. However, that point is not now. Until such evidence is gathered (outside of the four corners of pleadings) to allow the Court or trier of fact to establish the viability of Plaintiffs' other claims, Plaintiffs' claims for unjust enrichment can and must be maintained.[4]

## IV.   PLAINTIFFS SUFFICIENTLY ALLEGE BREACH OF EXPRESS WARRANTY

H&M correctly concedes that the falsified information in the Sustainability Profiles constitutes an express warranty. MTD at 20. However, H&M is wrong that its other false and misleading statements cannot "be properly considered as express warranties." *Id*. Defendant, once again, attempts to change the allegations in the complaint and cherry-pick which of its misleading statements the Court should consider. As discussed at length in the preceding sections, H&M is referring to a later version of the website that includes the qualifier "more," but the FAC refers to an earlier version where the phrase "at least 50% sustainable materials, such as

---

[4] Without citing any authority, Defendant also asserts that Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs did not specify the state law under which they assert the claim. MTD at 18. Plaintiffs allege the unjust enrichment claim on behalf of both the proposed nationwide class and the New York subclass. FAC ¶ 113. As set forth in Section VI below, it is premature for the Court to make any determination about class certification and the law applicable to the putative class. *See Shaw v. Hornblower Cruises & Events, LLC*, 2022 WL 16748584 at *5 (S.D.N.Y. Nov. 7, 2022) ("Courts have explained that 'a determination whether the Rule 23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the Court in making this determination.'"). Regardless, courts in this Circuit have certified nationwide unjust enrichment classes. *See Rapoport-Hecht v. Seventh Generation, Inc.*, 2017 WL 5508915, *3 (S.D.N.Y. Apr. 28, 2017) ("[a]lthough there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences," and regardless of which state's law applies, "the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched") (citation omitted and emphasis in the original); *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *21 (S.D.N.Y. May 30, 2013) (certifying a nationwide settlement class raising, among others, claims for unjust enrichment); *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *13-14 (S.D.N.Y. May 1, 2008) (same).

organic cotton and recycled polyester" was used to describe the Conscious Collection Products. FAC ¶ 18.  This is indeed an "affirmation of fact" that the Conscious Collection Products contain at least 50% sustainable materials, which Plaintiffs allege formed "the basis of the bargain." N.Y. U.C.C. § 2–313(1)(a), *see* FAC ¶ 109 ("Defendant's misrepresentations are material to Plaintiffs and reasonable consumers.  Plaintiffs reasonably relied on Defendant's Sustainability Score and the Sustainability Misrepresentations in deciding to purchase the Products, and these representations were part of the basis of the bargain in that they would not have purchased the Products, or would not have purchased it on the same terms, had they known that these representations were false and misleading").  The FAC then alleges that recycled polyester is not sustainable.  FAC ¶¶ 24-29.  H&M also ignores that this statement is coupled with another misleading statement, that recycled polyester, used in the Conscious Collection Products "stops [plastic waste] from ending up in landfills."  *Id.* ¶ 30.  The FAC provides substantial information proving this statement false or misleading, as "H&M's practices *hasten* the path to landfills."  *Id*. The percentage of sustainable materials in a product and whether H&M's practices prevent waste from going to landfills are assertations of fact and cannot constitute puffery.  *See Lugones v. Pete & Gerry's Organic, LLC,* 440 F. Supp. 3d 226, 241-42 (S.D.N.Y. 2020) ("Unlike Defendant's other statements, which make vague claims about love, this statement makes a factual claim – namely, that Defendant's hens have better lives than other hens because they have more access to the outdoors – upon which a reasonable consumer could rely.  This statement is only reinforced by references to 'OUTDOOR FORAGE' and images of hens frolicking in elysian pastures.").

## V.   PLAINTIFFS HAVE STANDING TO PURSUE INJUNCTIVE RELIEF

Defendant claims "Because the FAC does not allege that Plaintiffs intend to purchase the Products as currently labeled, it does not allege an injury sufficient to supply standing to enjoin future sales of the Products."  MTD at 22.  This is blatantly incorrect as the FAC, as quoted by

Defendant, says exactly that.  The allegation reads "Plaintiffs intend to, seek to, and will purchase the Products again and wish to do so with the assurance that the Product's representations are accurate."  FAC ⸿ 73.  Plaintiffs have explicitly alleged they will buy the products as labeled again, demonstrating a "real or imminent threat of future injury."  *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 356 (S.D.N.Y. 2020).  The allegation that Plaintiffs wish to make these purchases with accurate representations from H&M does not mean they will not make those purchases without accurate representations.  H&M attempts to create a new legal standard where injunctive relief is unavailable in all circumstances.  This Court should reject its attempt.

## VI.   THE COURT SHOULD DENY DEFENDANT'S MOTION TO STRIKE PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS

Defendant next argues that the Court should "strike any allegations by which Plaintiffs seek to represent a nationwide class."  MTD at 23.  Defendant's request, however, is premature at this stage.

"Motions to strike are generally disfavored[] and should be granted only when there is a strong reason for doing so."  *In re Tronox Sec. Litig.*, 2010 WL 2835545 at *4 (S.D.N.Y. June 28, 2010).  "A motion to strike class allegations … is even more disfavored" because a court must preemptively terminate class aspects "before plaintiffs are permitted to complete [] discovery … on questions relevant to class certification."  *Chenensky v. N.Y. Life Ins. Co.*, 2011 WL 1795305 at *1 (S.D.N.Y. 2015); *see also Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 515 (S.D.N.Y. 2015) ("[G]iven the hesitancy of courts in the Second Circuit to strike class allegations before a class certification motion is filed, the Court will therefore not strike Plaintiff's class allegations."); *Wang v. Hearst Corp.*, 2012 WL 2864524 at *3 (S.D.N.Y. July 12, 2012) ("[A] motion to strike class allegations … is … disfavored because it requires a

reviewing court to preemptively terminate the class aspects of … litigation … before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.").  Therefore, a motion to strike "should generally be dismissed as procedurally premature" if it argues issues "indistinguishable from the issues that would be decided in … a motion for class certification." *Maddison v. Comfort Sys. USA (Syracuse), Inc.*, 2018 WL 679477 at *7 (N.D.N.Y. Feb. 1, 2018); *see also Shaw v. Hornblower Cruises & Events, LLC*, 2022 WL 16748584 at *5 (S.D.N.Y. Nov. 7, 2022) ("Courts have explained that 'a determination whether the Rule 23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the Court in making this determination.'") (quoting *Bernstein v. Cengage Learning Inc.*, No. 19 Civ. 7541, 2020 WL 5819862 at *6 (S.D.N.Y. Sept. 29, 2020)).  Additionally, Plaintiffs can narrow or add detail to the class definition based on information learned in discovery.  *See Ortiz v. Sig Sauer, Inc.*, 448 F. Supp. 3d 89, 99 (D.N.H. 2020) ("At the present, the class definition set forth in the amended complaint is a proposal – and not by any means a certainty.  To the extent there are particular defects, they can be addressed on a motion to certify, when the court has the discretion to redefine or limit the class if necessary.").

Defendant next argues that Plaintiffs' breach of express warranty and unjust enrichment claims should be stricken because "the common laws of the fifty states materially differ."  MTD at 24.  But that argument too is premature.

Contrary to Defendant's assertions, courts in this district regularly certify nationwide classes based on the common law claims like those that Plaintiffs have brought here.  *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 570 (S.D.N.Y. 2014) (certifying nationwide class for fraud).  Additionally, at this stage of the proceedings, it is unclear if any of the vague variations

in state law that Defendant alludes to will have any bearing on the case. *See*, *e.g.*, *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 58 (S.D.N.Y.1993) (finding "application of the laws of different states, if necessary, does not preclude class action litigation"); *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. at 249-50 (D.N.J. June 30, 2008) (applying forum law because defendant did not "point out or establish any difference in the laws of the various jurisdictions").

"Courts should hesitate before concluding that those requirements [of Rule 23] cannot be met when such a conclusion is 'based on assumptions of fact rather than on findings of fact' and 'it remains unknown what class [the plaintiff will seek] to certify.'" *Hobbs v. Knight-Swift Transp. Holdings, Inc.,* 2022 WL 118256 at *4 (S.D.N.Y. Jan. 12, 2022) (quoting *Parker v. Time Warner Ent. Co., L.P.,* 331 F.3d 13, 21 (2d Cir. 2003)).  Again, a motion to strike "should generally be dismissed as procedurally premature" if it argues issues "indistinguishable from the issues that would be decided in … a motion for class certification." *Maddison*, 2018 WL 679477 at *7.  The Court should deny Defendant's motion to strike the nationwide class allegations.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss in its entirety.  If Defendant's motion is granted in any respect, Plaintiffs respectfully request leave to amend to cure such deficiencies.

Dated: March 17, 2023                           Respectfully submitted,

                                                **BURSOR & FISHER, P.A.**

                                                By:___*/s/ Neal J. Deckant*_____

                                                L. Timothy Fisher (*pro hac vice* forthcoming)
                                                Neal J. Deckant (NY State Bar No. 5026208)
                                                1990 North California Blvd., Suite 940
                                                Walnut Creek, CA 94596
                                                Telephone: (925) 300-4455
                                                Facsimile: (925) 407-2700

21

Email: ltfisher@bursor.com
       ndeckant@bursor.com

*Attorneys for Plaintiffs*